91 So.2d 327 (1956)
P.W. VAN METER, Individually and as Guardian of the person and property of Sophie K. Van Meter, Incompetent, Appellant,
v.
Edward L. KELSEY and his wife, Lois D. Kelsey, Appellees.
Supreme Court of Florida. Division B.
December 12, 1956.
*329 M.R. McDonald, Sebring, for appellant.
Haskins & Bryant, Sebring, for appellees.
O'CONNELL, Justice.
This is a suit to quiet the title to a strip of land approximately 413 feet wide lying between the center line running east and west of Section 17, Township 37 S, Range 30 E, as said line was established by the United States survey of 1870 and the center line of said section as located by the United States survey of 1917.
The suit was instituted by the plaintiff, P.W. Van Meter, appellant here, individually and as Guardian for his wife, Sophie K. Van Meter, an incompetent.
The evidence shows that in 1913 the plaintiff entered onto the fractional NE 1/4 of Section 17 for the purpose of homesteading said land. In the same year, Eugene W. Kelsey, father of the defendant, Kelsey, entered onto the fractional SE 1/4 of Section 17 for the same purpose. Both entries were made under the survey of 1870. At the time of the entries said lands were part of the public domain.
About 1915 plaintiff constructed a fence running east and west along his south boundary, the north boundary of the Kelsey property.
At about the same time Kelsey constructed a fence along the west boundary of his land and by consent of plaintiff connected said fence to the southwest corner of plaintiff's fence.
Thereafter, the United States made another survey in 1917, which survey when approved had the effect of moving the boundaries of Section 17 east and south. This survey moved the south boundary line of NE 1/4, the land claimed by plaintiff, south approximately 400 feet. When the survey of 1917 was made plaintiff did not move his fence. It is the land lying between this fence and the center line of Section 17, established by the 1917 survey that provoked this litigation.
Section 17 is bounded on the east by Lake Grassy and therefore when the section boundaries were moved east the effect was to reduce the acreage in both the NE and SE quarters, since the west edge of the lake remained the east boundaries of both quarter sections.
Plaintiff received patents, in 1923 and 1926, to the fractional NE 1/4 and to the E 1/2 of E 1/2 of the NW 1/4 of Section 17. Kelsey received a patent in 1923 to the fractional SE 1/4 and additional lands in the SW 1/4, Section 17. All patents were issued according to the 1917 survey.
It is obvious that both plaintiff and Kelsey received patents to lands not included in the quarter sections originally entered by them and it appears that this was done to compensate them for the reduction in acreage occasioned by moving the boundary lines of Section 17 eastward. The west edge of Lake Grassy was the east boundary of both quarter sections and remained such under the 1917 survey.
Plaintiff proved the legal title to the lands through introducing the patents from the United States and quitclaim deeds from Sippie M. Moore, who obtained a tax deed thereto from the State of Florida in 1941, the deeds from Moore to plaintiff having been recorded in 1952.
The defendant, Edward W. Kelsey, and wife claimed title to the land by virtue of a *330 quitclaim deed dated and recorded in 1954 from all the other heirs of his father, Eugene W. Kelsey, who died in 1951 and who is referred to throughout this opinion as Kelsey. Defendants assert that their predecessor, Kelsey, had acquired title to the land by adverse possession. They further assert that plaintiff is barred by laches from obtaining the relief he seeks.
The chancellor found in effect that the defendants did not prove their claim of title by adverse possession of their predecessor, but held (1) that the fence constructed by plaintiff in 1915 had been recognized and had been accepted as the true boundary between the lands by acquiescence of the parties and (2) that plaintiff was barred by laches. He then, based on prayer for affirmative relief in their answer, decreed the defendants to be the owners of said lands.
The evidence showed that the land in question was wild and unimproved, except for patches of ground near the edge of Lake Grassy, which patches of ground were not located with any certainty. Defendants claim that their predecessor, or persons under him, farmed these patches of land on several occasions and that until his death in 1951 Kelsey had some cattle running on the land. There was evidence that Kelsey had repaired plaintiff's fence on several occasions. There was no evidence of improvements made to the land, nor does the evidence show that Kelsey or the defendants ever returned the land for taxes, or ever paid taxes thereon. The evidence does show that application for a tax deed was made by Sippie M. Moore, that notice thereof was advertised according to law and a tax deed issued to her on these lands and others in 1941.
We agree with the chancellor that the defendants did not prove their claim of title by adverse possession. The possession of realty is presumed to be in subordination to the legal title and not to be adverse thereto. One who claims title by adverse possession for the required period must establish that fact by clear and positive proof. Atlantic Land & Improvement Co. v. Davis, Fla. 1954, 70 So.2d 910, Palmer v. Greene, 1947, 159 Fla. 174, 31 So.2d 706.
In support of his finding that the parties had established the fence as a boundary by recognition and acquiescence, the chancellor cited the case of Acosta v. Gingles, 1915, 70 Fla. 13, 69 So. 717. That case is not in point for there it appeared clearly that the line had been established by the father of the parties in order to divide a parcel of land between them, and the parties had made a settlement based on the division and had recognized it as the boundary for 25 years.
The case of Barrs v. Brace, 1896, 38 Fla. 265, 20 So. 991 is more nearly in point with the case before us. There as here, there was a question of correctness of the survey. In the case before us Kelsey signed a petition to the United States offering to cooperate in the resurveying of Section 17 and indicating that there was question about the boundary lines under the 1870 survey. Plaintiff testified that it was agreed between him and Kelsey that if the new survey moved his line south Kelsey would move south also. There is nothing in the record to indicate that the fence in question was agreed upon as the boundary between the two properties. Any recognition that it was such a boundary appears to have been conditioned on the results of the survey of 1917, made not before, but after the fence was erected. The only evidence to show that the fence was regarded as the boundary between the properties was the existence of the fence itself. This is not sufficient.
Next we consider laches as a bar to the relief claimed by plaintiff. The elements of laches as stated in 19 Am.Jur., Equity, Sec. 498 were cited by the chancellor. We agree that these elements are necessary to establish laches as a bar to relief.
The first of these elements is that there must be conduct on the part of *331 the defendant, or on the part of one under whom he claims, giving rise to the situation of which complaint is made. In this case such conduct must be either the acts of adverse possession claimed to have been made by defendants' predecessor and father or the filing of the deed from the other Kelsey heirs to defendants. Since this suit was instituted by the plaintiff in July 1954, some three and one half months after the deed to defendants was recorded, it is obvious that there could be no laches in bringing this suit as to that act. Therefore the acts or conduct to which the laches of plaintiff must relate are those of adverse possession on the part of the defendants' predecessor and father.
While the failure of the defendants to prove adverse possession is not conclusive on the point, it is indicative of the fact that there were either insufficient acts or conduct to put the plaintiff on notice that his rights were being invaded or that there was insufficient proof of such conduct.
Under the facts of this case it does not appear to us that the conduct of the defendants' predecessor was sufficient to require the plaintiff to act or be barred by laches.
The second element of laches is that the plaintiff, having had knowledge or notice of the defendants' conduct, and having been afforded the opportunity to institute suit, is guilty of not asserting his rights by suit.
If the conduct of Kelsey was insufficient to charge notice or knowledge to the plaintiff that Kelsey was claiming ownership of his land, it follows that this element is also missing.
The third element of laches is lack of knowledge on the part of the defendant that plaintiff will assert the right on which he bases his suit.
There is little in the record on this point. It is true that the plaintiff did not take possession of the lands in question at any time. He explains this by testifying that he had given permission to Kelsey to use the lands. However, insofar as the defendant, Edward W. Kelsey, and his wife are concerned it is pertinent to note that plaintiff had recorded deeds from Sippie M. Moore to the plaintiff and his wife, to the specific lands in question in the year 1952, two years before the defendants received the deed under which they claim. The recording of these deeds is notice to defendants that plaintiff was claiming an interest in said lands.
The last element of laches is that of injury or prejudice to the defendant in event relief is accorded to the plaintiff, or in event the suit is held not to be barred.
It must be first noted that neither defendants nor their predecessor ever made any improvements to the land in question. There was evidence that they did repair the plaintiff's fence on occasions, but this was not an improvement to the lands, nor do they claim the fence to have been constructed by their predecessor, nor do they claim to own it.
The defendants claim that if plaintiff recovers they will be denied any inheritance from the father of the defendant Edward Kelsey, since the heirs divided the lands of the father and defendants received this as their share. This may well be true but Edward W. Kelsey knew that his father did not have record title to the land, and he is charged with notice that plaintiff claimed some interest therein by virtue of the deeds from Sippie M. Moore, recorded in 1952, two years before he made his alleged settlement with the other heirs.
The defendants also contend that they are prejudiced in their defense of this suit by the plaintiff having waited to bring this suit until after the death of the father, Kelsey, who supposedly would be the best witness for the defense in proving adverse possession. This contention does not appear *332 to be well taken. The Kelsey family was composed of the father, the mother and five children. The mother and four of these children, including the defendant, all testified that they (the children) had been raised on the property, and the mother had lived there until the death of the father. Any of these witnesses were in position to testify to the same facts as the deceased father.
Laches is an affirmative defense. As such, the burden of proving it is on those who assert it, and it must be proved by very clear and positive evidence. This is particularly true where the application of the doctrine is to divest one of the ownership of land. We will not extend the doctrine too readily where it has this effect. Nor do we feel that the quieting of title in plaintiff results in inequity. Defendants' predecessor received all the land he was entitled to receive from the United States. He did not acquire title to the land in question by adverse possession, nor did he make improvements thereto. We say there is no inequity in denying to defendants that which is not theirs.
It does not appear to us in this case that the defendants have proved the essentials of either laches, adverse possession, or establishment of a boundary line by acquiescence or otherwise. The decree appealed from must be reversed.
We have not overlooked the defendants' contention that Kelsey's entry having been made under the 1870 survey, the 1917 survey did not affect their rights to the lands in question but we find no merit therein.
We have considered the claim of laches made by the plaintiff against the defendants and in view of our ruling it is unnecessary to answer that question.
For the reasons set forth above the decree is reversed and the chancellor is directed to enter a decree in favor of the appellant here, the plaintiff in the court below.
DREW, C.J., and TERRELL, THOMAS, HOBSON and THORNAL, JJ., concur.
ROBERTS, J., dissents.