186 So.2d 286 (1966)
Harry BLUMIN et al., Appellants,
v.
W. Tinsley ELLIS, Jr., As Trustee in Bankruptcy for General Utilities, Inc., a Florida Corporation, Appellee.
No. 5432.
District Court of Appeal of Florida. Second District.
May 4, 1966.
Rehearing Denied June 3, 1966.
*289 Cheren & Golden, Miami, Granat, Rosenblatt & Roemer, Miami Beach, and Fishback, Davis, Dominick & Troutman, Orlando, for appellants.
Feibelman, Friedman, Hyman, Durant & Britton, Ft. Lauderdale, for appellee.
WILLSON, J.H., Associate Judge.
Palmdale Water and Gas Company, hereinafter referred to as "Palmdale," was the owner and operator of a water and sewerage disposal system in Broward County. On May 10, 1961, its stockholders unanimously approved its dissolution, and the distribution of its assets to themselves. So far as the record discloses, no steps were taken to comply with the statutory provisions for this process.
On July 5, 1961, George Cheren and George Collier, purporting to act as agents for all the stockholders of Palmdale, entered into a contract with General Utilities and Industries, Inc., a Utah Corporation, authorized to do business in Florida, to sell all the assets of Palmdale, which was described in the contract as a corporation "presently in liquidation." The portions of the contract relevant to this appeal, are as follows:
"3. Sellers represent that PALMDALE WATER AND GAS COMPANY, a Florida corporation, is in the process of liquidation and that by resolutions appropriately adopted with respect to this sale, it is provided that the assets shall be distributed to the Stockholders or their order; and the parties of the first part will order and direct the PALMDALE WATER AND GAS COMPANY to assign its assets directly to the Buyer and the Buyer agrees to *290 accept all conveyances, bills of sale, assignments and transfers of title directly from PALMDALE WATER AND GAS COMPANY, as performance pursuant to this Agreement.
"4. The purchase price which the Buyer agrees to pay unto the Sellers and for which the Sellers agree to sell the real and personal property and contracts hereinafter described unto the Buyer is the sum of ONE MILLION ($1,000,000) DOLLARS, payable in the following manner, to-wit:
"(a) The Buyer agrees to assume certain liabilities, and mortgages of the Sellers, as part of the purchase price, in accordance with a Schedule of Liabilities of Sellers, attached hereto and made a part hereof as Schedule `A'.
* * * * * *
"(c) The balance of the purchase price shall be paid in Preferred Stock of the Buyer, which the parties agree shall be SEVEN HUNDRED THOUSAND ($700,000.) DOLLARS, in the manner and terms as hereinafter set forth.
* * * * * *
"22. The Closing date referred to and mentioned in this Agreement shall be as of May 20, 1961, irrespective of the dates of making and delivery of the various instruments described herein, and which the parties agree to make, execute and deliver as soon as practicable.
"23. Having determined the net balance of the purchase price, namely $700,000, to be payable in Preferred Stock, Buyer shall cause to be issued two (2) series of Preferred Stock, fifty (50%) per cent of which shall be known as Preferred Stock `A', and fifty (50%) per cent of which shall be known as Preferred Stock `B', issued to the order of the Sellers, in denominations requested by them to the various Stockholders, of Preferred Stock of the Buyer, which shall contain the following terms and provisions: * * *.
* * * * * *
"27. In the event the Buyer shall be unable by vote of its Stockholders to cause the appropriate amendment of its charter to provide for the issuance of the Preferred Stock agreed to be delivered unto the Sellers as part of the purchase price, as, for example, if it shall be deemed illegal or improper to issue said Preferred Stock on the advise of its counsel or counsel for an underwriter in connection with a proposed public issue of the Buyer, and by reason of the foregoing the Buyer shall be unable to issue said Preferred Stock certificates to the Sellers, then the parties mutually agree that the Buyer may cause to be issued two series of debentures, which debentures shall be dated, bear interest and be payable in the same manner as is hereinabove provided for the dating, bearing of dividends and maturity of the two issues of Preferred Stock above described in paragraph 23. The said debentures shall contain the same provisions with respect to conversion of common stock as is provided for with respect to the Preferred Stock described.
"28. The decision of the Buyer with respect to the issuance of Preferred Stock or Debentures, shall be made on or before the six (6) months from date and if the Buyer shall fail or refuse to issue Preferred Stock or Debentures, as above described, unto the Sellers on or before six (6) months from date, then it shall be optional with the Sellers to demand and receive of and from the Buyer, a first mortgage upon the plant and equipment of the Sellers conveyed to the Buyer, securing promissory notes of the Buyer to the Sellers which said notes shall be in the amounts and payable on the same dates and shall bear interest in the same amounts as is provided for with respect to the Preferred Stock issue, (our emphasis) the terms of which are *291 more particularly hereinabove described in paragraph 23.
"29. Buyer agrees that Sellers shall have a Vendor's Lien on all assets of Sellers which have been turned over and delivered to the Buyer pursuant to this Agreement, until the Closing hereon between the parties.
* * * * * *
"32. All conveyances, warranties, representations and terms, provisions and conditions of this Agreement shall survive the Closing provided for hereinabove and shall bind and inure to the benefit of the parties."
At the request of General Utilities and Industries, Inc., the transfer to it of Palmdale's assets was made on July 7, 1961. The documents evidencing the transfer were executed by Palmdale's officers, under the authority of the following resolution of its directors and stockholders:
"By unanimous vote it was resolved that said officers, or any two (2) of them, be given full and complete authority to carry out and perform each and everything that might be done or necessary to be done in order to complete such transaction, including the execution and delivery of any and all instruments required by the Purchaser, as agents for all the stockholders.
"By unanimous resolution, it was resolved that the Purchase and Sale Agreement, dated the 5th day of July, 1961, between George Cherin (sic) and George J. Collier, as agents for the stockholders of Palmdale Water and Gas Company, as Sellers, and General Utilities and Industries, Inc., a Utah corporation, as Buyer, be ratified and approved and the agency of George Cherin (sic) and George J. Collier for all of the stockholders of the corporation, be ratified and confirmed to all intents and purposes in connection with said contract.
"It was further resolved by unanimous vote that hereafter, anything that needs
to be done may be done by Harry Blumin
and Roland W. Granat in their respective official capacities for and on behalf of the corporation without any further necessity to hold any stockholders' or directors' meetings, it being the intent and purpose of all the stockholders that Harry Blumin, as President, and Roland W. Granat, as Secretary-Treasurer, shall have full power to do whatever is necessary to be done and that all persons dealing with the corporation may have the right to rely upon this resolution as to the validity of such acts by them, under this power, to the same extent as if the same were ratified and approved by a Board of Directors, and that a Certificate to such effect or a certified copy of these Minutes, certified by the Secretary-Treasurer, shall be conclusive as against all of the stockholders of the corporation as to the right of the said officers to do and perform the things hereinabove set forth.
"It was further unanimously resolved that the said Harry Blumin, as President, and Roland W. Granat, as Secretary-Treasurer, be and they are hereby authorized to enter into any supplementary arrangements or agreements that may be necessary in connection with the closing of the transaction, with General Utilities and Industries, Inc., and that all such acts are and shall be ratified and approved by all of the stockholders to the same extent as if they personally ratified and approved the same, giving and granting to the said Harry Blumin and Roland W. Granat, as officers and as agents for the corporation and for each individual stockholder, the right, power and authority to do whatever is necessary or required to be done in connection with such closing, without any further action by the stockholders or the Board of Directors."
Not being able to deliver the $700,000.00 in preferred stock, which represented the balance of the purchase price of Palmdale's assets, General Utilities and Industries, Inc., executed and delivered to Harry Blumin and *292 Roland W. Granat, as agents for all the stockholders of Palmdale, its promissory note in that amount. The note contained these provisions:
"1. On the 5th day of July, 1961, General Utilities & Industries, Inc., a Utah corporation, qualified to do business in the State of Florida, agreed to purchase from Harry Blumin and Roland W. Granat, acting as agents for all of the stockholders of Palmdale Water and Gas Co., a Florida corporation, a certain water and sewage disposal plant located in Broward County, Florida, and certain personal property, pipe lines, lift-stations, etc., connected therewith, more particularly described and set forth in that certain Agreement, dated the 20th day of May, 1961, reference to which is hereby made, and the same is hereby made a part hereof by reference.
"2. The said Agreement provided for the delivery of muniments of title after certain preferred stock would be authorized, issued and delivered, in the sum of Seven Hundred Thousand Dollars, ($700,000.00), in accordance with the terms and conditions of the said Agreement.
"3. The purchaser, General Utilities & Industries, Inc., has requested the transfer of title prior to the issuance of the preferred stock, or the debentures provided for in said Agreement, to expedite and assist it in its affairs and the sellers, Harry Blumin and Roland W. Granat, agents, have agreed to deliver such muniments of title and transfer of assets as called for by the said Agreement.
"4. This promissory note acknowledges the receipt by the maker hereof of such transfers, conveyances, assignments and other muniments of title called for in the contract and has undertaken to give this note to evidence conclusion of the transaction, pursuant to the said Agreement, and to create an obligation for the balance of the purchase price, until such time as General Utilities & Industries, Inc., shall become authorized and empowered to issue and deliver preferred stock, or in the alternative debentures, as provided for in said Agreement.
"5. This promissory note, and the agreement herein contained, are not a novation nor a modification of any of the terms and conditions of the said Purchase and Sale Agreement, all of which continue and survive the execution of this instrument and the delivery of muniments of title.
"6. If and when the maker hereof, General Utilities & Industries, Inc., issues and delivers to the payees hereof, Harry Blumin and Roland W. Granat, as agents of all the stockholders of Palmdale Water and Gas Co., Seven Hundred Thousand Dollars ($700,000.00) worth of preferred stock, in accordance with the terms and conditions of the contract referred to, or, as provided in the Agreement if the preferred stock fails to be authorized, delivers debentures in said amount, with terms and conditions agreed to be applicable to the preferred stock, also as provided for in said contract, then this obligation shall cease and become null and void and this note shall be delivered up and cancelled; otherwise it shall remain in full force and effect until paid.
"7. Nothing in this Agreement or in this promissory note shall relieve the maker hereof from its duty under the contract to do and perform everything necessary and expeditiously to carry out and perform under the said Agreement to deliver the preferred stock, or as provided in the said Agreement, the issuance and delivery of the said debentures."
The assets transferred to General Utilities and Industries, Inc., finally came to rest in the hands of General Utilities, Inc., a Florida Corporation, hereinafter called "General Utilities," with full notice of the rights and liabilities of the parties to the Contract, and the assumption thereof on its part. Neither the preferred stock, nor the alternative debentures, nor the alternative *293 mortgage were delivered to either Blumin or Granat, Palmdale's stockholders, or Palmdale itself.
On January 2, 1963, Harry Blumin, Herbert Wallach, Jr. and Albert Bleich, who were stockholders of Palmdale, filed their complaint against Palmdale; General Utilities; George J. Collier, Inc., a Florida corporation; Collier Homes, Inc., a Florida corporation; Hutchinson Brothers, a Florida corporation; Roland W. Granat; George J. Collier; Goldie Collier; Enid A. Busch; Roberta A. Perle; Lester J. Perle; Ira H. Gottlieb; and O.J. Pushkin: the corporate defendants, other than Palmdale, being creditors of Palmdale, and the natural defendant being the remaining stockholders of Palmdale, and in some instances also Palmdale's creditors. There were other creditors of Palmdale who were not made parties to the action. The complaint sought to enforce an undenominated lien upon the assets of Palmdale, which had been transferred to General Utilities, for the purchase price thereof.
General Utilities filed a motion to dismiss the complaint, which was denied. We sustained the chancellor's ruling, General Utilities, Inc. v. Blumin, et al., Fla.App., 155 So.2d 576, and the Supreme Court denied certiorari. General Utilities, Inc. v. Blumin, et al., 157 So.2d 816. After the cause was returned to the Court below an answer was filed by General Utilities. Subsequent thereto, the exact date not being disclosed by the record, General Utilities was adjudicated a bankrupt, and W. Tinsley Ellis, Jr., was appointed as trustee, and duly substituted as a party defendant in the pending action. The trustee by leave of Court, filed an amended answer. On final hearing the cause was dismissed with prejudice, and this appeal, in which the plaintiffs are joined by all the defendants, except, of course, the trustee in bankruptcy, followed.
The chancellor made the following finding of fact and conclusions of law:
"1. This Court finds from the evidence that the plaintiffs were not the sellers of the property involved and that all the conveyances were made by Palmdale Water and Gas Company. Palmdale Water and Gas Company was never dissolved and there was no proof of any assignment of the debt to the Plaintiffs. The Court therefore finds that the cases of Hedlund v. Jones [Fla.App.], 114 So.2d 221 and Alabama-Florida Co. v. Mays [111 Fla. 100], 149 So. 61 [91 A.L.R. 139] are applicable. The vendor's lien was not assigned and, if it had been assigned, it would only have been personal to the vendor.
"2. That by the terms of the agreement entered into by the plaintiffs on July 5, 1961, any vendor's lien lapsed at the time of closing. This Court finds that this agreement construed the intent of the parties and that when all the documents were transferred on December 5, 1961, a closing took place in accordance with the terms of said agreement and thereafter the plaintiffs could no longer claim a vendor's lien.
"3. That substantial personal property, as well as real property, was sold in gross, without any distribution or separation, and because of the equities in this case, the Plaintiffs have no lien.
"4. That the actions and conduct of the Plaintiffs in this cause waived any claim of a vendor's lien."
This Court having held that the complaint stated a cause of action, the plaintiffs were entitled to a decree if they established their right to any type of lien by a preponderance of the evidence, unless, of course, the defendants established a good defense by the same quantum of proof. Savage v. Horne, Fla., 49 So.2d 329; Walker v. Atlantic Coast Line Railroad Company, Fla.App., 121 So.2d 713. The plaintiffs did prove the allegations of their complaint by a preponderance of the evidence, and we need only determine whether the plaintiffs were entitled to some type of lien, or whether a good defense was established *294 by the same degree of proof. In reaching this conclusion we are not overlooking or setting aside the chancellor's findings of fact, since they do not deal with the sufficiency of plaintiffs' proof.
It is our view that, under the provisions of paragraph 28 of the contract, plaintiffs were entitled to an equitable mortgage or equitable lien on the assets transferred to General Utilities. An equitable lien or mortgage will arise from a written contract which shows an intention to charge or mortgage some particular property with a debt or obligation. Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409; Gables Racing Assoc. v. Persky, 148 Fla. 627, 6 So.2d 257; Feldman v. Warshawsky, 122 N.J. Eq. 596, 196 A. 205; Bridgeport Electric & Ice Co. v. Meader, 5 Cir., 72 F. 115. The basis of equitable liens may be estoppel or unjust enrichment, Jones v. Carpenter, supra; Phelps v. T.O. Mahaffey, Inc., Fla.App., 156 So.2d 900, or the equitable maxim that equity will deem as done that which ought to have been done. Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865; 53 C.J.S. Liens § 4, p. 837. The provisions of the contract, above mentioned, clearly show an intent to create a lien or mortgage upon the assets of Palmdale, and equity should effect this intent.
There is no merit in the argument that the right to a lien was waived or lost by taking the promissory note to which we have referred. Its terms conclusively show that there was no intention to waive any rights under the contract, and no legal principles are cited that would bring about an involuntary waiver.
The express or implied waiver of the vendor's lien, had there been one, would not bar the right to an equitable lien or mortgage. The facts in the present case are quite similar to these in Bridgeport Electric & Ice Co. v. Meader, supra. The contract in that case provided that the seller of an ice machine was to receive promissory notes representing a portion of its purchase price, which notes were to be secured by mortgage upon the machine and the building and lands on which it was erected, or by personal endorsement satisfactory to the seller. The seller later agreed to accept mortgage bonds to be issued by buyer as security for the notes. The notes were delivered but not the mortgage bonds, and the buyer became insolvent. The seller brought suit to require the buyer to execute the mortgage or to declare a lien in its favor on the machine, building and land. The Court held that under these circumstances there was no waiver of the right to a mortgage. While the sellers in the case before us did elect to take stock in payment of the purchase price, the buyer never tendered the stock. It ought not be heard to assert any waiver of the right to an equitable mortgage when it failed to deliver the stock.
The defense that the plaintiffs had no right to maintain the action is foreclosed by our decision on the sufficiency of the complaint.
The trustee's amended answer presents three defenses which are affirmative in nature: (1) that plaintiffs were guilty of laches; (2) that the relief sought was prohibited by §§ 608.55 and 726.01 Fla.Stats., F.S.A., and (3) that, being in violation of these statutes, the granting of the relief sought would be in contravention of §§ 67 and 70 of the Bankruptcy Act. We will consider the second and third defenses together.
The elements of laches are: (1) conduct on the part of the defendant, or one under whom he claims, giving rise to the situation of which complaint is made; (2) delay in asserting the plaintiff's rights, he having had an opportunity to institute suit; (3) lack of knowledge or notice on the part of defendant that the plaintiff would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in event relief is accorded to the plaintiff. Van Meter v. Kelsey, Fla., 91 So.2d 327. We find nothing in the record that would support a reasonable conclusion on the part *295 of General Utilities that the plaintiffs would not assert the rights they had under the contract. The language of the promissory note precludes this. Nor do we find any evidence that General Utilities, after securing possession of Palmdale's assets, did anything more with respect thereto than it was obligated for under the contract, or would have done normally. Thus at least two of the necessary elements of laches are absent.
We recognize that the trustee in bankruptcy occupies a dual position in this action, and that while he stands in the shoes of the bankrupt and has only its rights for some purposes, he also represents and may assert the rights of the bankrupt's creditors. Roscoe Moss Co. v. Duncan (C.C.A. 9), 336 F.2d 670. What we have just said about laches applies, therefore, only to the trustee insofar as he takes the bankrupt's place.
§ 608.55 Fla.Stats., F.S.A., provides, in part, that no conveyance, assignment or transfer of any property of any corporation, which shall have refused to pay any of its obligations, nor any payment made, judgment suffered, lien created or security given by such corporation, when it is insolvent or its insolvency is imminent, with the intent of giving a preference to any creditor, shall be valid. The plain purpose of this statute is to prohibit a corporation which is in financial difficulties, or actually insolvent, from preferring one creditor above another through its own act or omission. It is our view that § 608.55, Fla.Stats., F.S.A., does not forestall the enforcement of an equitable lien or mortgage under the facts disclosed by the record.
Appellee's brief asserts that the inability of General Utilities to pay its obligations "is continuously repeated in the record." The portions of the record referred to are not found in the appendix to appellee's brief, and we might well ignore this assertion. However, our interpretation of § 608.55, Fla.Stats., F.S.A., makes this of no consequence, for the declaring and enforcing of an equitable lien or mortgage upon the assets conveyed by Palmdale to General Utilities and Industries, Inc., and by it to General Utilities, would be no act or omission on the part of General Utilities, coupled with an intent on its part to prefer the plaintiff creditors. It is an enforcement rather than a transfer device and would not, therefore, be in violation of the statute.
At this point we might terminate our opinion since appellee relies upon a violation of § 608.55 to activate the provisions of §§ 67 and 70 of the Bankruptcy Act. Nevertheless, our holding that plaintiffs were entitled to an equitable mortgage or lien, the fact that appellee is a trustee in bankruptcy, certain random contentions made by his counsel in their brief and oral argument, and the patent need for bringing this litigation to an end, makes it necessary for us to make some further observations.
As we have pointed out, equitable liens are recognized and enforced in this state. Although we have found no reported decisions in this state on this question, nor any from our sister state courts that are squarely in point, we hold that equitable liens arise at the time of the transaction from which they spring. This is consistent with the view expressed by the federal courts in Danais v. M. De Matteo Const. Co. (D.C.N.H.), 102 F. Supp. 874; In the Matter of the William P. Bray Company (D.C. Conn.), 127 F. Supp. 627; United Pacific Ins. Co. v. First National Bank of Oregon (D.C. Oregon), 206 F. Supp. 94, where the equitable lien of a surety upon a contractor's bond was held to arise when the bond was executed, and Caldwell v. Armstrong (C.C.A. 10), 342 F.2d 485, where it was held that an equitable lien becomes effective when the right to the fund materializes or the fund comes into existence. While or appellate courts have not passed upon the question, the general rule in other jurisdictions is that an equitable lien is superior to the right of all persons except bona fide purchasers for value, or subsequent *296 valid lienholders, without notice. Walker v. Brown, supra; 53 C.J.S. Liens § 13, p. 859. See also O.H. Thomason Builder's Supplies, Inc. v. Goodwin, Fla. App., 152 So.2d 797, where there is dicta to this effect. We adopt this rule. Neither our Statute of Frauds  § 725.01, Fla.Stats., F.S.A., nor our Recording Act  § 689.01, Fla.Stats., F.S.A., render an equitable lien unenforceable. Hullum v. Bre-Lew Corporation, Fla., 93 So.2d 727.
The filing of the lis pendens in this action on January 2, 1963, was notice to the world of appellants' claim. At the time the lis pendens was filed, there were no persons, so far as the record discloses, who were bona fide purchasers for value, or valid lienholders without notice, whose rights had accrued between the time the equitable lien arose and the lis pendens was filed. There was, therefore, no obstacle to the enforcement of the equitable lien or mortgage, and the suit in equity was the only method by which it could be enforced under the law of this state.
Prior to 1938, equitable liens were recognized and enforced in bankruptcy courts under a wide variety of circumstances; and in many instances where they would not have been recognized in this state. In that year Congress amended § 60 of the Bankruptcy Act to restrict the recognition and enforcement of such liens. The Act was again amended in 1950 for the apparent purpose of slightly relaxing the 1938 amendment. § 60, as it now stands, does not render equitable liens unenforceable as against the trustee in bankruptcy. Mulhern v. Albin (C.C.A. 8), 163 F.2d 41; Cohen v. Wasserman, 1 Cir., 238 F.2d 683; Eberly v. Dudley (C.C.A. 9), 314 F.2d 8; Caldwell v. Armstrong, supra; In Re Estes (D.C.N.D.Tex.), 105 F. Supp. 761, and numerous other cases subsequent to the 1938 amendment in which the enforceability of equitable liens is expressly or tacitly approved. Such liens may, of course, constitute voidable preferences.
The essential elements of a voidable preference under § 60 of the Bankruptcy Act are as follows: (1) There must be a transfer of property owned by the debtor; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made or suffered by the debtor while insolvent; (5) within four months of bankruptcy; (6) the effect of which will enable the creditor to obtain a greater percentage of this debt than other creditors of the same class; (7) the debtor receiving the transfer or to be benefited thereby, or his agent, must have reasonable cause at the time the transfer is made to believe the debtor is insolvent; and the burden of proving all these elements of a voidable preference is upon the trustee. Moran Bros., Inc. v. Yinger (C.C.A. 10), 323 F.2d 699. The transfer having taken place more than four months preceding the bankruptcy of General Utilities, the appellee wholly failed to meet the burden of proof placed upon him, unless as a matter of law, under the provisions of § 60, the equitable lien or mortgage is void or voidable as to the bankrupt's creditors.
There are two tests set up for determining the time of transfer under § 60; one for personal property, the other for real property. Where a transfer of personal property is alleged to be a voidable preference, the time of transfer is deemed to be that when it is so far perfected under applicable state law as to be superior to the rights of a creditor obtaining a subsequent lien by legal or equitable proceedings upon a simple contract. As to real property the time of transfer is deemed to be that when it is so far perfected under applicable state law that no subsequent bona fide purchase from the debtor could create rights in the property superior to the rights of the transferee. When the foregoing tests are applied to the instant transaction, it is clear that it does constitute a preferential transfer as a matter of law; for the filing of appellants' action, and the recording of the lis pendens, prevented a simple contract creditor from *297 thereafter securing a superior lien upon the bankrupt's personal property by legal or equitable proceedings, and likewise prevented a subsequent bona fide purchaser of real estate from the bankrupt from securing rights therein superior to those of appellants. The filing of the action to enforce the equitable lien is the only remedy which was open to appellants. This satisfied the requirement of § 60 that available means of perfecting legal liens have been employed. Caldwell v. Armstrong, supra; Danais v. M. De Matteo Const. Co., supra.
Appellee's answer seeks to invoke § 67 of the Bankruptcy Act. Although not precisely spelled out, it appears that it is subdivision d.2 of this Section which he has in mind, and he seeks to bring it into play through the alleged violation of § 608.55, Fla.Stats., F.S.A. This defense is hinted at but not pursued in appellee's brief. Having found that § 608.55, Fla.Stats., F.S.A., was not, transgressed, neither d.2 nor any other portion of § 67 is applicable.
The basis upon which appellee seeks the benefits of § 70 of the Bankruptcy Act, and in particular subdivisions c., e.(1) and e.(3) thereof, is also the alleged contravention of § 608.55, Fla.Stats., F.S.A. This is futile, as we have shown.
It is true that under § 70 the trustee in bankruptcy is vested with all the rights, remedies, and powers of a creditor holding a lien at the date of the bankruptcy, whether or not such a creditor actually exists, but this does not have the broad effect postulated by appellee. The validity, nature and effect of the plaintiffs' lien is to be determined by state law. Loye v. Denver United States National Bank, 10 Cir., 341 F.2d 402. The trustee in bankruptcy has the same status as a creditor who could have acquired a superior lien as to plaintiffs at the time of bankruptcy, Carroll v. Holliman, 10 Cir., 336 F.2d 425, and not before. In Re Alikasovich, 6 Cir., 275 F.2d 454. Liens perfected as against a levying creditor are valid against the trustee, Loye v. Denver United States National Bank, supra, unless rendered void by the Bankruptcy Act. Cohen v. Wasserman, supra.
We have demonstrated that under the law of this state the plaintiffs have a valid and enforceable equitable lien or mortgage. It is not void per se under §§ 60, 67 and 70 of the Bankruptcy Act. A creditor of General Utilities who had acquired a lien, as of the date of its bankruptcy, would not have any rights superior to that of the plaintiffs. It follows that the rights of the trustee are inferior to those of the plaintiffs.
We have not ignored the alleged existence of legal liens which might affect the property involved. One of these liens is that of a final judgment in favor of Harry Blumin, et al., doing business as Harry Blumin & Company, entered on July 11, 1963, in the Civil Court of Record in and for Dade County, Florida. Blumin is a stockholder in Palmdale, and one of the plaintiffs in this action. As such, he and his partners had full notice of the equitable lien or mortgage from the time of its inception. Further, it does not appear that this judgment was ever recorded in Broward County, and it therefore had no priority over appellants' equitable lien or mortgage. The judgment of Delmonico Hotel Corporation against General Utilities, entered on December 5, 1962, in the Circuit Court in and for Hillsborough County, Florida, is in the same position as the Blumin judgment insofar as recording in Broward County and consequent priority is concerned.
Reference is made in appellee's brief to an action to foreclose a mechanics lien by Rader & Associates, against Palmdale, General Utilities, and General Utilities and Industries, in the Circuit Court in and for Broward County, Florida. The only evidence which we have found in the record on this subject is to the effect that Rader & Associates entered suit against General Utilities on October 11, 1962. The exact *298 nature and disposition of the action is not disclosed. The most than can be said with respect to this and other rumoured claims, or liens, insofar as state law is concerned, is that there might have been some question of priorities between them and appellant's lien.
As we have said, the trustee in bankruptcy, as representative of the bankrupt, has not shown that the relief sought by plaintiffs is barred by their laches. We find nothing in the record to support his defense of laches as to the bankrupt's creditors.
The decree of the chancellor is reversed with instructions to enter a decree granting plaintiffs the relief for which they prayed.
SHANNON, Acting C.J., and ANDREWS, CHARLES, O., Jr., Associate Judge, concur.