WIGGINTON, Judge.
Defendant has appealed a final judgment permanently enjoining it from distributing or furnishing electric energy to the Board of Public Instruction of Okaloosa County at the Baker schoolhouse site, except for that part of the site known as the Baker football field, the buildings, concession stands, walkways, and other lighting facilities inside of the football field area. The judgment also permanently enjoined plaintiff from furnishing or distributing electric energy to the football field area, the servicing of which was granted to defendant. By its appeal, defendant contends that the trial court erred in not properly applying the law of laches, waiver, and estoppel to the facts established by the evidence in rendering the judgment here assaulted.
In the interest of brevity and convenience, plaintiff-appellee will be hereinafter referred to as Gulf; defendant-appellant Choctawhatchee Electric Cooperative, Inc., will be referred to as Cheleo; and the School Board of Okaloosa County will be referred to as the Board. The material facts in the case are not substantially in dispute. Gulf, a private utility corporation, exclusively furnished electric service to the Baker schoolhouse site during the years 1936 to 1954. On July 13, 1954, Cheleo submitted a proposal to the Board to supply electric power to new facilities then being constructed at the Baker schoolhouse site to replace facilities theretofore damaged or destroyed by fire. This proposal was accepted by the Board, and Cheleo entered upon the performance of its agreement. Upon learning of Chelco’s invasion of the area then being served by it, Gulf filed an action on August 25, 1954, seeking an injunction to restrain Cheleo from furnishing electric service to the Board at the Baker schoolhouse site. This action resulted in a final judgment rendered on March 23, 1955, by which Cheleo was permanently enjoined from furnishing electric service to any portion of the Baker schoolhouse site. The judgment was timely appealed *419 by Cheleo, which appeal was implemented by the posting of a supersedeas bond which had the effect of staying enforcement of the injunction rendered against Cheleo.
The appeal by Cheleo was never perfected but continued to pend in the Supreme Court of Florida for the next ensuing 15 years. During the first 13 years that the appeal pended, Cheleo kept the supersedeas bond filed by it in full force and effect by paying the annual premiums accruing thereon. During that period of time Cheleo continued to furnish electric service to some of the facilities located at the Baker schoolhouse site while Gulf continued to furnish electric service to the remaining facilities at that location. In 1968 Gulf and Cheleo entered into a stipulation by which it was agreed that Cheleo would be relieved from the cost of maintaining the supersedeas bond or the necessity of paying future premiums thereon, and furthermore that the permanent injunction granted by the final judgment then on appeal to the Supreme Court would continue to be stayed to the same effect as if the superse-deas bond had remained in force. The stipulation was submitted to and approved by the trial court on June 7, 1968. Chel-co’s appeal to the Supreme Court was finally dismissed by that court on September 9, 1970.
In January, 1970, the Board wrote separate letters to Gulf and Cheleo soliciting from each of them proposals for the furnishing of electric service to all facilities located at the Baker schoolhouse site, requesting that such proposals set forth the available service, rates, and any other advantages which the proposer might care to offer. At that time Gulf and Cheleo were each providing a portion of the electric service to the schoolhouse site under the forced arrangements which had continued in effect over the preceding 15 years during the pendency on appeal of Gulf’s original injunction against Cheleo. Cheleo filed with the Board its written proposal in which it agreed, among other things, to furnish free electric service to the football field area of the school. This proposal was accepted by the Board on January 20, 1970, and notice of acceptance was sent to Cheleo on the following day.
Unaware that the Board had accepted Chelco’s proposal, officials of Gulf met with officials of Cheleo on January 23, 1970, at which meeting both parties understood that Gulf was continuing to assert its exclusive legal right to furnish electric service to the entire Baker schoolhouse site. Cheleo did not advise Gulf during this meeting that the Board had accepted its latest proposal for furnishing electric service to the entire Baker school complex. Gulf subsequently submitted to the Board its proposal to furnish electric service to the Baker site but was not advised until March 26, 1970, that the Board had theretofore accepted Chelco’s proposal. In June, 1970, Cheleo began purchasing materials and equipment for the furnishing of the Baker school electrical service and by July 10, 1970, all materials and equipment necessary to furnish such service had been ordered by Cheleo. The officials of Gulf and Cheleo met on three separate occasions during the months of July and August in an effort to resolve the dispute as to which should furnish electric service to the Baker school complex, but no agreement resolving this dispute was reached. As a consequence, Gulf notified Cheleo on August 10, 1970, of its intention to institute this litigation and seek a permanent injunction restraining it from furnishing electric service in violation of Gulf’s rights, which action was actually commenced on August 19, 1970.
By its complaint Gulf alleged that it was adequately providing electric service to the Baker schoolhouse area prior to the time Cheleo invaded its area of operation in 1954, which invasion was contrary to the mandatory provisions of the statute regulating rural electric cooperatives operating in *420 Florida.[1] Gulf alleged that, because of this violation, the trial court rendered its final judgment on March 23, 1955, permanently enjoining Cheleo from serving any portion of the Baker schoolhouse site with electric power, which injunction was in full force and effect at the time of the institution of this action and is conclusive as to the rights of the parties herein. Gulf alleged that Chelco’s latest proposal to furnish electric service to the Baker school complex is contrary to the provisions of the statute referred to above as well as to the terms and provisions of the permanent injunction rendered by the court on March 23, 1955. Chelco’s defense to the action is that Gulf is barred from seeking the relief prayed for under the equitable doctrines of laches, waiver, and estoppel. The judgment appealed agreed with Gulf and enjoined Cheleo from furnishing electric service to any part of the Baker schoolhouse site except the football field area where the greater part of Chelco’s expenditures had been concentrated in anticipation of performing its contract with the Board.
It is undisputed that at the time Gulf brought its original injunction proceeding against Cheleo in 1954, Gulf was adequately serving the Baker school with electric service. The statute then in effect, which remains the law today, prohibits an electric cooperative from distributing or selling electricity or electric energy to anyone who is, at the time such service is offered, receiving adequate central station service from any utility agency, privately or municipally owned individual partnership or corporation. The statutory prohibition referred to fixes the public policy of this state as pronounced by our Supreme Court in the Tampa Electric Company case.[2] In that case the court condemned the action of the electric cooperative in using its preferential economic advantage as a means of extending its service to customers previously being adequately served by a private utility company; it held that such activity exceeded not only the fundamental underlying purpose which motivated the establishment of the rural electrification program but also violated the plain language as well as the spirit of F.S. Section 425.04, F.S.A. It was because of the public policy of Florida and the statutory prohibition referred to above that the trial court of Oka-loosa County entered its final judgment in 1955 permanently enjoining Cheleo from furnishing electric service to the Baker school site. This judgment “entombed in eternal quiescence” the rights of the parties insofar as the furnishing of electric service to the Baker school was concerned.[3]
It is basically Chelco’s position that Gulf waived the benefits secured to it under its permanent injunction of 1955 by failing to enforce its provisions prior to the time Cheleo entered into its latest agreement with the Board for the exclusive right to furnish electric service to the entire Baker school complex. Such contention appears to ignore the fact that Gulf *421 was powerless to enforce the provisions of the injunctive decree against Cheleo from the date on which it was rendered in 19SS until the appeal was dismissed in 1970. Although during the pendency of the appeal, the injunctive provisions of the judgment remained binding upon the parties until reversed,[4] they are nevertheless superseded, first, by the bond given by Chel-eo and, later, by the stipulation of the parties which was submitted to and approved by the court. Since during the pendency of the appeal Gulf had no legal right to enforce the injunctive provisions of the judgment against Cheleo, its failure to do so cannot form the basis of a waiver or es-toppel. One may waive only a legal right it possesses but cannot waive one that it is powerless to assert or enforce.
Cheleo also contends that Gulf was guilty of laches and should be es-topped from maintaining this action because it delayed bringing this suit until after Cheleo had changed its position by making substantial expenditures and incurring substantial obligations in furtherance of its agreement with the Board. This contention does not take into account the undisputed testimony to the effect that the officials of Gulf and Cheleo met together within two days after the Board awarded the contract in question to Cheleo on January 21, 1970, at which meeting Chelco’s officials clearly understood that Gulf was continuing to maintain the position that it had the exclusive lawful right to furnish electric service to the entire Baker school complex. This conference took place long before Cheleo expended any funds for the purchase of materials and equipment which it subsequently installed in contemplation of performing its contract with the Board. Having been put on notice as to the legal position Gulf was taking, and with red flags of controversy flying, Cheleo proceeded at its peril to expend funds for labor, materials, and equipment used at the school and cannot now claim foul. The evidence further discloses that it was not until March 26, 1970, that Gulf learned of the award by the Board to Cheleo of the new exclusive contract to furnish electrical service to the Baker school. Gulf immediately entered into a series of conference discussions with officials of Cheleo in an attempt to resolve the dispute; after such negotiations proved futile, Gulf promptly instituted this action on August 19, 1970. Under the circumstances it can hardly be contended that Gulf was guilty of such delay in asserting its rights by the institution of this action that it caused Cheleo to change its position to its detriment, thereby giving rise to the application of the doctrine of estoppel.
We fail to find in the record before us any clear or convincing evidence establishing those elements necessary in order to give rise to the defense of laches, estoppel, or waiver. The burden of establishing such affirmative defenses by a clear preponderance of the evidence rests upon appellant.[5] Having failed to carry this burden, the trial court was eminently correct in reaching the conclusions embodied in its final judgment. The judgment appealed is accordingly affirmed.
SPECTOR, C. J., and JOHNSON, J., concur.

. F.S. § 425.04(4), F.S.A.
“A cooperative shall have power:

“(4) To generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and to distribute, sell, supply, and dispose of electric energy in rural areas to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten per cent of the number of its members; to process, treat, sell, and dispose of water and water rights; to purchase, construct, own and operate water systems; to own and operate sanitary sewage systems; and to supply water and sanitary sewage services. However, no cooperative shall distribute or sell any electricity, or electric energy to any person residing within any town, city or ax-ea which person is receiving adequate central station service or who at the time of commencing such service, or offer to serve, by a cooperative, is receiving adequate central station service from any utility agency, privately or municipally owned individual partnership or corpoi'ation; ”

. Tampa Electric Company v. Withlacoochee River Electric Cooperative, Inc., (Fla.1960) 122 So.2d 471.

. Gordon v. Gordon, (Fla.1952) 59 So.2d 40.

. Pennsylvania Threshermen & Farmers’ Mutual Casualty Insurance Company v. Barrett, (Fla.App.1965) 174 So.2d 417.

. Peacock v. Firman, (Fla.App.1965) 177 So.2d 560. Van Meter v. Kelsey, (Fla.1956) 91 So.2d 327.