ROTHENBERG, J.
The plaintiffs, Christopher Trevett and Cynthia Trevett (“the Trevetts”), appeal *999 from a final judgment denying their claim for ejectment based on the trial court’s finding that their claim is barred by the affirmative defense of laches. We affirm. The defendant, Joyce Walker (“Ms. Walker”), appeals from the portion of the final judgment denying her claim to quiet title based on the trial court’s finding that she failed to establish boundary by acquiescence. As we are affirming the trial court’s denial of the Trevetts’ ejectment claim, we do not reach the issue raised by Ms. Walker on cross-appeal.
The Trevetts and Ms. Walker own adjacent parcels of real property in Key West. Their properties are separated by a fence and brick wall (collectively, “the fence”) that has existed in the same location since the late 1980s, but encroaches several feet onto the Trevetts’ property. In December 2007, the Trevetts filed a claim for ejectment, seeking to obtain possession of the strip of land between the fence and the legal boundary line of their property. In response, Ms. Walker filed an answer and raised several affirmative defenses, including laches and boundary by acquiescence. Ms. Walker also filed a counterclaim, seeking to quiet title based, in part, on boundary by acquiescence.
The trial court conducted an evidentiary hearing on the parties’ claims. As demonstrated by the evidence, the relevant collective history of the properties is as follows. Ms. Walker’s property has been in her family for over seventy years. Prior to 1938, the fence was erected between the two properties, and since 1938, Ms. Walker’s property has been used as a commercial parking lot. Prior to the Trevetts purchasing their property on December 17, 1986, Ms. Walker’s property was owned by her parents, Arthur and Gladys Mulberger. Two days after the Trevetts purchased their property, they obtained a survey prepared by Joe M. Trice, which showed that the fence encroached onto the Trevetts’ property by approximately four feet (“Trice survey”). Thereafter, on December 23, 1986, the Trevetts recorded their deed, with no change in the legal description from the deed filed by their predecessor-in-interest. Although the Trevetts were aware of the encroachment, they installed a planter and planted approximately twenty palm trees running along their side of the fence, and installed brick pavers and underground lighting abutting the palm trees. Sometime later, after a storm knocked down a part of the fence, the Trevetts put the fence back up in the same location.
After Mr. Mulberger’s death in March 1987, the property was placed into a trust managed by Ms. Walker and Mrs. Mulber-ger (“Trust”). Thereafter, in November 1987, the Trevetts hired Frederick Hilde-brandt to resurvey their property (“Hilde-brandt survey”). This survey indicated the fence encroached 3.7 feet onto the Trevetts’ property, and depicted the installation of the planter and pavers. In 1995, the commercial parking lot, which was then owned by the Trust, was resurfaced up to the fence line without any objection from the Trevetts.
Following Mrs. Mulberger’s death in April of 2001, the Trust deeded the property to Ms. Walker on November 27, 2001. Ms. Walker never had her property surveyed, and she was unaware of any surveys prepared by any predecessor-in-interest.
On December 4, 2001, just a few days after the Trust deeded the property to Ms. Walker, the Trevetts, through counsel, sent a letter to Ms. Walker, informing her of the Trice survey, and indicating they wanted to move the fence to the property line. Prior to this letter, Ms. Walker and the Trevetts did not have any dispute, agreement, or other communication re *1000 garding the boundary line. After the Tre-vetts sent the letter to Ms. Walker, the Trevetts took no further action regarding the boundary line or location of the fence until they filed their ejectment claim on December 11, 2007. Further, there is no evidence of any dispute or agreement between the parties’ predecessors-in-interest regarding the boundary line or fence.
Following the bench trial, the trial court entered an amended final judgment, denying the Trevetts’ claim for ejectment, finding Ms. Walker established the affirmative defense of laches by clear and positive evidence, but failed to establish boundary by acquiescence. The trial court also denied Ms. Walker’s counterclaim to quiet title, finding that she did not establish boundary by acquiescence. The trial court concluded that the current location of the fence, as set forth in the Hildebrandt survey, delineates the boundary line between the parties’ properties. The Trevetts’ appeal and Ms. Walker’s cross-appeal followed.
On appeal, the Trevetts contend the trial court erred by finding that Ms. Walker established the affirmative defense of lach-es by clear and positive evidence. We disagree, and therefore, affirm the trial court’s denial of the Trevetts’ ejectment claim, and the trial court’s finding that the location of the fence is the boundary line between the parties’ properties.
In Van Meter v. Kelsey, 91 So.2d 327, 330-31 (Fla.1956), the Florida Supreme Court set forth the following necessary elements to establish the affirmative defense of laches: (1) “there must be conduct on the part of the defendant, or on the part of one under whom he claims, giving rise to the situation of which complaint is made”; (2) “the plaintiff, having had knowledge or notice of the defendants’ conduct, and having been afforded the opportunity to institute suit, is guilty of not asserting his rights by suit”; (3) “lack of knowledge on the part of the defendant that plaintiff will assert the right on which he bases his suit”; and (4) “injury or prejudice to the defendant in event relief is accorded to the plaintiff, or in event the suit is held not to be barred.” As the Trevetts do not dispute that Ms. Walker established the first two elements, we will limit our analysis to the third and fourth elements.
As to the third element, the Trevetts contend the trial court erred by finding that Ms. Walker established by clear and positive evidence that she lacked knowledge that the Trevetts would assert their right to possession of the disputed strip of land. Relying on Van Meter, the Trevetts argue that, by recording them deed on December 23, 1986, Ms. Walker had record notice of the Trevetts’ claim to ownership and ultimate possession of the entire property described in their deed, including the disputed stoip of land. Under the circumstances of this case, we disagree.
In July 1954, P.W. Van Meter (“Van Meter”) instituted an action against Edward L. Kelsey and his wife (“the defendants”) to quiet title to a strip of land approximately 413 feet wide. The evidence showed that in 1913, Van Meter entered onto the NE 1/4 of Section 17, and Edward Kelsey’s father, Eugene Kelsey (“Kelsey”), entered onto the SE 1/4 of Section 17, for the purpose of homesteading the lands. Van Meter’s and Kelsey’s entries were made pursuant to the survey of 1870, and at that time, the lands were public domain. Two years later, in 1915, Van Meter constructed a fence running along the southern boundary of his property and the north side of Kelsey’s property. Shortly thereafter, Kelsey constructed a fence running along the western boundary of his property, and with Van Meter’s consent, attached his fence to the southwest *1001 corner of Van Meter’s fence. In 1917, the United States resurveyed Section 17, which resulted in moving the boundary of Section 17 east and south, and in the loss of acreage to both the SE 1/4 and NE 1/4 of Section 17. After the boundaries were changed, Van Meter did not move the fence, and instead, allowed Kelsey to use the lands. Thereafter, in order to compensate Van Meter and Kelsey for their loss of acreage, they received patents from the United States — Van Meter in 1923 and 1926, and Kelsey in 1923 — for additional lands not included in the lands they originally entered in 1913.
Van Meter established title to the lands by introducing the patents issued by the United States and a quitclaim deed recorded in 1952 from Sippie M. Moore, who had obtained a tax deed in 1941 from the State of Florida as to that land. The defendants claimed title to the property pursuant to a quitclaim deed recorded in 1954 from Kelsey’s heirs to the defendants, following Kelsey’s death in 1951, which included the disputed land. The defendants argued that prior to his death, Kelsey had obtained title to the disputed strip of land by adverse possession. The defendants further argued Van Meter is barred from obtaining the relief he sought based on laches.
The chancellor found that the defendants did not establish title based on adverse possession by Kelsey. However, the chancellor granted relief in favor of the defendants, finding “(1) that the fence constructed by [Van Meter] in 1915 had been accepted as the true boundary between the lands by acquiescence of the parties and (2) that [Van Meter] was barred by lach-es.” Id. at 330. Therefore, the chancellor found the defendants were the owners of the disputed lands.
The Florida Supreme Court agreed with the chancellor’s finding that the defendants failed to establish title by adverse possession. The Court, however, disagreed with the chancellor’s finding as to boundary by acquiescence, stating:
[H]ere, there was a question of correctness of the survey. In the case before us Kelsey signed a petition to the United States offering to cooperate in the resurveying of Section 17 and indicating that there was question about the boundary lines under the 1870 survey. [Van Meter] testified that it was agreed between him and Kelsey that if the new survey moved his line south Kelsey would move south also. There is nothing in the record to indicate that the fence in question was agreed upon as the boundary between the two properties. Any recognition that it was such a boundary appears to have been conditioned on the results of the survey of 1917, made not before, but after the fence was erected. The only evidence to show that the fence was regarded as the boundary between the properties was the existence of the fence itself. This is not sufficient.

Id.

Next, the Florida Supreme Court addressed whether the chancellor erred by finding the relief sought by Van Meter was barred by the affirmative defense of lach-es. In rejecting the chancellor’s finding, the Court concluded that the defendants failed to establish any of the elements of laches, and, therefore, ordered that judgment be entered in favor of Van Meter. Specifically, as to the third element — lack of knowledge on the part of the defendants that Van Meter will assert the right on which .he bases his suit — the Florida Supreme Court concluded:
It is true that [Van Meter] did not take possession of the lands in question at any time. He explains this by testifying that he had given permission to Kelsey to use the lands. However, insofar as *1002 the defendant, Edward W. Kelsey, and his wife are concerned it is pertinent to note that [Van Meter] had recorded deeds from Sippie M. Moore to [Van Meter] and his wife, to the specific lands in question in the year 1952, two years before the defendants received the deed under which they claim. The recording of these deeds is notice to defendants that [Van Meter] was claiming an interest in said lands.
Id. at 331 (emphasis added).
We conclude that the Trevetts’ reliance on the above emphasized language in Van Meter is misplaced as the facts in Van Meter differ greatly from the circumstances in the instant case. The Trevetts argue that the recording of their deed put Ms. Walker on notice that they will claim an interest in the property, and, therefore, the trial court erred by finding that the Ms. Walker established the third element of laches. However, we find that the facts in the instant case and in Van Meter are distinguishable.
In the instant case, it is undisputed that Ms. Walker obtained title to her property approximately fifteen years after the Tre-vetts recorded their deed in 1986. However, as Ms. Walker’s property has been in her family for over seventy years and the property was merely deeded to her following her parents’ deaths, there is no indication that Ms. Walker examined either the Trevetts’ deed or the deeds of her predecessors-in-interest prior to taking title. Further, she first learned of the encroachment approximately ten days after she obtained title when the Trevetts, through counsel, objected to the location of the fence. Further, after notifying Ms. Walker of the encroachment in 2001, the Tre-vetts took no further action until 2007 when they filed suit against Ms. Walker. Therefore, not only did the Trevetts treat the fence as the boundary line between the properties for the fifteen years prior to Ms. Walker taking title, the Trevetts continued to treat the fence as the boundary line between 2001 and 2007. For example, when the fence was partially knocked down during a storm, the Trevetts erected the fence in the same exact location, rather than taking the opportunity to relocate the fence to the true boundary line.
Even prior to Ms. Walker taking title to her parents’ property, the Trevetts’ actions and inaction were not consistent with individuals who would assert rights contained in their recorded deed. Within a few days of closing on their property in 1986, the Trevetts obtained the Trice survey, indicating that the fence encroached onto their property. Instead of addressing the encroachment, as was done in Van Meter.; the Trevetts did not notify the Mul-bergers of the encroachment. Rather, the Trevetts treated the fence as the boundary between the two properties by installing a planter and planting approximately twenty palm trees running along their side of the fence, and installing brick pavers and underground lighting abutting the palm trees. Further, in 1995, almost ten years after the Trevetts recorded their deed, they did not object when the commercial parking lot, which was then owned by the Trust, was being resurfaced up to the fence line. Therefore, under these circumstances, we conclude that the Trevetts’ reliance on Van Meter is misplaced, and the trial court correctly determined that Ms. Walker established the third element of laches.
In finding that the Ms. Walker established the fourth element of laches— injury or prejudice to Ms. Walker if relief is accorded to the Trevetts or if the suit is determined not to be barred — the trial court reasoned, in part:
The fact that [Ms. Walker’s] ability to effectively defend against [the Trevetts’] *1003 claim has been greatly impaired by virtue of the fact that [Ms. Walker’s] parents passed away and other potential witnesses having knowledge about the circumstances surrounding the construction and positioning of the chain link fence have disappeared during the 21 year period of delay brought about by [the Trevetts’] failure to act satisfies the fourth element.
We agree with the trial court’s analysis, and, therefore, conclude that the trial court correctly determined that Ms. Walker established the fourth element of laches. Accordingly, we affirm the trial court’s order finding that the Trevetts’ claim for ejectment is barred by the affirmative defense of laches, and determining that the current location of the fence is the boundary line between the parties’ properties.
As we have affirmed the trial court’s determination that the Trevetts’ ejectment claim is barred by laches, it is unnecessary to address Ms. Walker’s cross-appeal.
Affirmed.