In re Andrea M. CHAUNCEY, Debtor.

Patricia Dzikowski, Plaintiff,

v.

Andrea M. Chauncey,
Debtor/Defendant.

Bankruptcy No. 02–37312–BKC–PGH.
Adversary No. 03–3116–BKC–PGH–A.

United States Bankruptcy Court,
S.D. Florida.

Feb. 18, 2004.

---

Patricia Dzikowski, c/o John L. Walsh, Esq., Ft. Lauderdale, FL, pro se.

Norman L. Schroeder II, Esq., Lake Worth, FL, for debtor.

### AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAUL G. HYMAN, JR., Bankruptcy Judge.

**THIS MATTER** came before the Court for trial on October 31, 2003 upon the Complaint to Avoid Transfer, for Turnover of Property of the Estate, to Object to Discharge of the Debtor and for Imposition of Equitable Lien/Equitable Subrogation filed by Patricia Dzikowski ("Plaintiff" or "Trustee"). The Court, having reviewed the pleadings, having heard the testimony of the witnesses, having reviewed the exhibits admitted into evidence, having heard the argument of counsel and being otherwise being fully advised in the premises, enters the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FINDINGS OF FACT

On December 31, 2002, Andrea M. Chauncey ("Defendant" or "Debtor") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Petition"). At that time, the Debtor owned a home located at 7225 Coppitt Key Street in Lake Worth, Florida. The Debtor owned her home for eight and one half years prior to filing the Petition and that she continuously resided there during that time. The home is subject to a mortgage (the "Mortgage") held by Chase Mortgage Corporation ("Chase").

The Debtor was the sole shareholder of a Florida corporation, AAA Affordable Transmissions, Inc. ("AAA") from 1997 to November 2000. The Debtor closed AAA in November 2000. All of the assets of AAA were leased and were repossessed by the lessors. The Debtor became unemployed as a result of AAA's closing. The Debtor testified that when she closed

AAA, she hired help to clean out the business premises and in that move, she lost all of AAA's books and records. The Debtor testified that she has not been able to locate the books and records of AAA since the move and as a result, she could not make them available to the Trustee for inspection.

The Debtor introduced AAA's 2000 Tax Return (the "2000 Tax Return") into evidence. The 2000 Tax Return reflected One Hundred and Eighty–Eight Thousand Nine Hundred Seventy–Four Dollar ($188,974.00) in income for that year. The Debtor testified that she listed this amount on her Statement of Financial Affairs but that she did not receive any of those funds.

The Debtor has been largely unemployed since she closed AAA in November 2000. The Debtor supported herself through part-time employment, contributions from her boyfriend, ex-husband and father. However, she did not keep any records of the contributions of support from her boyfriend, ex-husband and father. The Debtor was unable to provide the Trustee with documents related to her financial accounts because she did not keep copies of bank statements and cancelled checks. The Debtor testified that it would cost between Fifty ($50.00) and Seventy–Five ($75.00) Dollars to obtain copies of these records and she could not afford to do so.

The Debtor is the mother of two young children. In 2002, the Debtor became pregnant with her second child. The Debtor's relationship with her boyfriend ended in 2002 and he moved out of the Debtor's home. The Debtor testified that at that time she was unemployed, living alone, pregnant and afraid that she would lose her home because she was unable to meet her expenses. On March 15, 2002, the Debtor initiated a personal injury lawsuit against Eclipse Marketing of Utah, Inc. ("Eclipse") in state court (the "Personal Injury Lawsuit") seeking to recover for personal injuries sustained as a result of an incident which occurred between the Debtor and an agent of Eclipse.

According to the Palm Beach County Civil Court Public Records, American Express Centurion Bank ("American Express") filed suit against the Debtor on July 30, 2002 (the "American Express Lawsuit"). The Debtor first consulted with and sought the advice of her bankruptcy attorney in August 2002. However, the Debtor did not file for bankruptcy at that time. Also according to the Palm Beach County Civil Court Public Records, on October 23, 2002, a judgment in favor of American Express (the "American Express Judgment") was entered against the Debtor.

On November 22, 2002, the Personal Injury Lawsuit was settled for the gross sum of Eighty–Thousand Dollars ($80,000.00). Upon the direction of the Debtor, these funds were initially deposited into the trust account of the Debtor's personal injury attorney. After payment of attorneys' fees and costs, the Debtor was entitled to a net sum of Forty–Seven Thousand Four Hundred Thirty Dollars and Eight–Two Cents ($47,430.82) ("Settlement Proceeds"). The Debtor did not take possession of the Settlement Proceeds, nor were they ever deposited into her personal bank account. Instead, the Debtor directed her personal injury attorney to remit the Settlement Proceeds directly from his trust account to Chase sometime between November 22, 2002 and December 18, 2002.

On December 18, 2002, Chase received the payment from the Debtor's personal injury attorney and applied the Settlement Proceeds to the outstanding principal balance that existed on the Mortgage. As a result, the principal of the Mortgage was

reduced from Eighty–Two Thousand Four Hundred Eight–Six Dollars and Sixty–Five Cents ($82,486.65) to Thirty–Four Thousand Nine Hundred Fifty Dollars and Two Cents ($34,950.02). The Debtor testified that her motivation for remitting the Settlement Proceeds directly from her personal injury attorney's trust account to Chase was to preserve her ability to keep her home. The Debtor testified that she was afraid that she would lose her home and she realized that the equity in her homestead could be protected from unsecured creditors. The Debtor also denied any intent to deceive, defraud or hinder her creditors. The Debtor further testified that the payment to Chase allowed her to lower the monthly payment on the Mortgage.

The Debtor filed her bankruptcy Petition on December 31, 2002. The Debtor claimed her home as her homestead and as exempt under 11 U.S.C. § 522(b), FLA. CONST. Art. 10, § 4(a)(1) and FLA. STAT. § 222.01 (2003). The Debtor testified that the filing of the bankruptcy case was intentionally delayed until after she received the Settlement Proceeds and the payment was made to Chase.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and § 157(b)(2)(J).

#### A. Section 727(a)(3)

The Trustee argues that the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(3) because the Debtor did not maintain and has not produced documents necessary for the Trustee to ascertain and confirm the Debtor's financial condition and transactions.

■ Section 727(a)(3) of the Bankruptcy Code provides:

The court shall grant the Debtor a discharge, unless–

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case

11 U.S.C. § 727(a)(3). The burden is on the Trustee to show that both the debtor failed to maintain or preserve adequate records from which the debtor's financial condition or business transactions could be ascertained. *Meridian Bank v. Alten*, 958 F.2d 1226, 1233 (3d Cir.1992). Thereafter, the burden shifts to the debtor to prove justification. *Id.*

In the instant case, the Court finds that the Debtor did not maintain and has not produced the documents necessary for the Trustee to ascertain and confirm the Debtor's financial condition and transactions. As the evidence at trial established, none of the business records from AAA have been made available to the Trustee. In addition, the evidence also established that the Debtor failed to provide the Trustee with documentation relating to her personal financial accounts for the year preceding the filing of the Petition. As a result, the Court finds that the lack of documentation has prevented the Trustee from ascertaining the Debtor's financial condition. Therefore, the Court holds that the Trustee satisfied its burden.

■ As stated above, once the Trustee satisfies its burden of proving that the debtor failed to maintain or preserve adequate records from which the debtor's financial condition or business transactions could be ascertained, the burden then

shifts to the debtor to prove justification. A debtor must explain his or her losses or deficiencies of documentation in such a manner as to convince the court of good faith and businesslike conduct. *Meridian Bank,* 958 F.2d at 1233. In the case at hand, the Court finds that the Debtor's explanation concerning the absence of all her business and personal financial records is unsatisfactory. The Court finds that after moving AAA's books and records, the Debtor had a responsibility to ensure that such documentation was not misplaced and that it was kept for a reasonable time after the business was closed. Furthermore, the Court also finds that the Debtor had a responsibility to retain her personal bank account records and her explanation that she could not afford a relatively minor expense of Fifty ($50.00) to Seventy–Five ($75.00) Dollars to obtain copies of these records is not credible.

In sum, the Court finds that it was the duty of the Debtor to provide the Trustee with adequate financial information and she failed to do so. Furthermore, the Court finds that the Debtor has not adequately justified her failure to provide the Trustee with documentation relating to AAA and her personal financial accounts. Therefore, the Court concludes that the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(3).

### B. Section 727(a)(5)

The Trustee argues that the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(5) because the Debtor has failed to explain the loss of assets or the deficiency of assets to meet the debtor's liabilities.

■ Section 727(a)(5) of the Bankruptcy Code provides:

The court shall grant the debtor a discharge, unless–

the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities

11 U.S.C. § 727(a)(5). Under this section of the Bankruptcy Code, the Trustee has the preliminary burden to demonstrate that the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors. *In re Hermanson,* 273 B.R. 538, 545 (Bankr. N.D.Ill.2002); *In re Bryson,* 187 B.R. 939, 955 (Bankr.N.D.Ill.1995). If the Trustee meets its burden, then the burden shifts and the debtor must establish a "satisfactory" explanation for the asset reduction. *See In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984).

■ In the instant case, the Court finds that the Debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors. The Debtor was the sole shareholder of AAA from 1997 to November 2000. AAA's 2000 Tax Return reflected an income of One Hundred and Eighty–Eight Thousand Nine Hundred Seventy–Four Dollar ($188,974.00). Based on that evidence, the Court finds that the Trustee met its burden of establishing that the Debtor formerly owned substantial, identifiable assets that are no longer available to creditors.

As stated above, it is then the debtor's responsibility to establish a "satisfactory" explanation for the asset reduction. The Court finds that the Debtor in the instant case has satisfied that burden. All of AAA's assets were leased and repossessed by the lessors. The Debtor did not retain any assets of the business when its operations terminated. Although the Debtor has not presented any documentation to evidence the repossession of the assets, the Court, nonetheless, accepts the Debt-

or's explanation for the asset reduction. While the Court recognizes that the prevailing case law requires that the debtor's explanation be supported by sufficient documentation,[1] the Court finds that the situation in the instant case is distinguishable. Unlike the matters upon which the case law is based,[2] the instant case involves leased business equipment. The Court finds that it would have been impossible for the Debtor to support her explanation for the asset reduction with documentation because the assets were leased, they were not titled in the Debtor's name and they were repossessed by the lessors upon the termination of AAA's business operations. As such, the Court accepts the Debtor's explanation for the loss of AAA's assets and finds that the Debtor has presented a "satisfactory" explanation for the asset reduction. Therefore, the Court concludes that the Debtor should not be denied a discharge pursuant to 11 U.S.C. § 727(a)(5).

### C.   Section 727(a)(4)(D)

■ The Trustee argues that the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(d) because the Debtor knowingly and fraudulently withheld from the Trustee canceled checks and other documentary evidence detailing her financial condition.

Section 727(a)(4)(D) of the Bankruptcy Code provides:

The court shall grant the debtor a discharge, unless–

(4) the debtor knowingly and fraudulently, in or in connection with the case–

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs

11 U.S.C. § 727(a)(4)(D).

In the instant case, the evidence presented at trial established that the Debtor lost all of AAA's books and records when the business premises were cleaned out. In addition, the Debtor testified that she did not retain her personal banking records and that she could not afford to obtain duplicate copies from the bank. Although the Court finds the Debtor's explanation that she could not afford to obtain duplicate copies of her personal records implausible, there was no evidence presented to support a finding that the Debtor knowingly and fraudulently withheld her business and personal financial records from the Trustee. Therefore, the Court concludes that the Debtor should not be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(D).

### D.   Section 727(a)(2)(A)

■ The Trustee argues that the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) because she transferred the Settlement Proceeds with the intent to hinder, delay and defraud her creditors. Section 727(a)(2)(A) of the Bankruptcy Code provides:

The court shall grant the debtor a discharge, unless–

---

**1.** *In re Hermanson,* holds that the debtor's explanation must meet two criteria in order to be deemed "satisfactory." First, it must be supported by at least some documentation. Second, this documentation must be sufficient to "eliminate the need for the Court to speculate as to what happened to all the assets." *In re Hermanson,* 273 B.R. at 546.

**2.** *In re Hermanson* involved an individual with a net worth of approximately $4,000,000 who was the first or second largest shareholder in eleven different corporations and owned jewelry worth between $3,000 and $4,000 and a wardrobe worth $10,000.

(2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-

(A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A). The plaintiff bears the burden of proving that the debtor is not entitled to receive a discharge by a preponderance of the evidence. *In re Lordy*, 214 B.R. 650 (Bankr.S.D.Fla.1997); *See also* Fed.R.Bankr.P. 4005. The intent to hinder, delay or defraud can be inferred from extrinsic evidence. *In re Allen*, 203 B.R. 786 (Bankr.M.D.Fla.1996); *In re Mackey*, 158 B.R. 509, 512 (Bankr. M.D.Fla.1993); *In re Elliott*, 79 B.R. 944, 946 (Bankr.M.D.Fla.1987). The reason for such an inference is because a debtor is unlikely to testify that he or she possessed the requisite intent to commit wrongdoing. *In re Lordy* at 664. Courts generally consider the following "badges of fraud" when deciding whether a debtor had the intent to hinder, delay or defraud: (1) the objecting creditor had a "special equity" in the property converted; (2) the debtor and the transferee maintained a close relationship; (3) the debtor's possession, benefit or use of the property; (4) the debtor engaged in a "sharp practice" of dealing prior to filing bankruptcy; (5) the debtor became insolvent as a result of the transfers; (6) the conversion occurred after the entry of a judgment; and (7) the debtor received inadequate consideration. *See In re Barker*, 168 B.R. 773, 777 (Bankr. M.D.Fla.1994) (citing *In re Oberst*, 91 B.R. 97, 101 (Bankr.C.D.Cal.1988)).

■ In addition to these "badges of fraud," the conversion of non-exempt assets to exempt assets can be evidence of intent to hinder, delay or defraud. Two factors in determining such intent are the timing of the conversion to exempt property and any attempts by the debtor to conceal the conversion. *In re Wilbur*, 211 B.R. 98 (Bankr.M.D.Fla.1997).

■ In the instant case, the Court finds that the Debtor's actions in transferring the Settlement Proceeds directly to Chase establish that she intended to hinder, delay or defraud her creditors. First, the timing of the transfer is evidence of an intent by the Debtor to keep the Settlement Proceeds out of the reach of creditors. As indicated by the Palm Beach County Civil Court Public Records, on July 30, 2002, American Express filed a lawsuit against the Debtor. Almost immediately thereafter in August 2002, the Debtor consulted with and sought the advice of her bankruptcy attorney. Furthermore, the Debtor testified that she was unemployed, living alone, pregnant and afraid that she would lose her home because her income was insufficient to meet her expenses. The Court finds that based on the Debtor's actions, it is clear that the Debtor was aware of the possibility that a judgment might be entered against her. The Debtor also testified that at that time she was also aware that a bankruptcy filing could protect the equity in her homestead from unsecured creditors. However, despite fear of losing her home and her knowledge of bankruptcy protection, the Debtor declined to file for bankruptcy in August 2002.

While the events discussed above were unfolding, the Personal Injury Lawsuit was still pending in state court. Based on the evidence presented at trial, the Court finds that the Debtor expected to receive an award of damages in that case and she intentionally delayed the filing of the Petition until the Settlement Proceeds were

out of the reach of creditors. The chain of events that occurred subsequent to August 2002 supports the Court's conclusion that the Debtor acted with fraudulent intent. On October 23, 2002, the American Express Judgment was entered against the Debtor. Approximately one month later on November 22, 2002, the Debtor settled the Personal Injury Lawsuit and rather than take possession of the Settlement Proceeds, the Debtor directed that they be deposited into her personal injury attorney's trust account. As the evidence established, the Settlement Proceeds were never deposited into the Debtor's personal bank account. Accordingly, the Court finds that the Debtor's deliberate attempt to avoid taking possession of the Settlement Proceeds implies that she knew that those funds would have been subject to the claims of creditors.

Following the initial deposit of the Settlement Proceeds into her personal injury attorney's trust account, the Debtor then requested that the funds be remitted directly to Chase sometime between November 22, 2002 and December 18, 2002. Chase received the Settlement Proceeds on December 18, 2002. Thirteen days after the transfer of the Settlement Funds to Chase, the Debtor filed the Petition on December 31, 2002. Based on this series of events, the Court finds that the Debtor intentionally timed the transfer so that the Settlement Proceeds would be out of the reach of creditors by the time she filed the Petition. The Court finds that if the Debtor had filed the Petition in August 2002, when she first consulted with her bankruptcy attorney, the Settlement Proceeds would have belonged to the estate. Furthermore, the Court finds that if the Debtor had not transferred the Settlement Proceeds to Chase, the funds would have been subject to creditors' claims or would have become property of the estate upon the filing of the Petition. As such, the Court finds that the totality of the Debtor's actions in delaying the filing of the Petition, securing the Settlement Proceeds, transferring the non-exempt Settlement Proceeds directly to Chase to pay down the Mortgage on the exempt homestead and filing the Petition after the transfer was complete collectively evidence the Debtor's fraudulent intent.

In addition to the timing of the transfer, the fact that the Debtor retained the benefit of the Settlement Proceeds further supports the Court's conclusion that the Settlement Proceeds were transferred with the intent to hinder, delay and defraud creditors. Following the transfer, Chase applied the Settlement Proceeds to the outstanding principal balance that existed on the Mortgage. As a result, the principal of the Mortgage was reduced from Eighty–Two Thousand Four Hundred Eight–Six Dollars and Sixty–Five Cents ($82,486.65) to Thirty–Four Thousand Nine Hundred Fifty Dollars and Two Cents ($34,950.02) and the Debtor's monthly payment was lowered to an amount that the Debtor could afford. As such, the Court finds that the Debtor retained the benefit of the Settlement Proceeds even though the funds were transferred to Chase. Therefore, the Court holds that the Debtor acted with the intent to hinder, delay and defraud her creditors and the Court concludes that the Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(2)(A).

### E. Imposition of an Equitable Lien

■ The Trustee argues that the Court should impose an equitable lien against the Debtor's homestead in the amount of $47,430.82 to reflect the value of the Settlement Proceeds that were fraudulently transferred to Chase and sheltered in the homestead. In the instant case, the Court finds that based on the circum-

stances, the imposition of an equitable lien on the Debtor's homestead is warranted.

■ Article X, Section 4(a) of the Florida Constitution provides in pertinent part:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead ...

Fla. Const. § 4(a). The Supreme Court of Florida has long emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home. *See In re Financial Federated Title & Trust, Inc.,* 273 B.R. 706, 713 (Bankr.S.D.Fla.2001). However, the homestead exemption is not to be so liberally construed as to make it an instrument of fraud or imposition upon creditors. *Id.* The principle that the homestead cannot be employed as a shield and defense after fraudulently imposing on others has been applied in numerous cases decided by the Florida Supreme Court. *See LaMar v. Lechlider,* 135 Fla. 703, 185 So. 833 (1939); *Sonneman v. Tuszynski,* 139 Fla. 824, 191 So. 18 (1939); *Craven v. Hartley,* 102 Fla. 282, 135 So. 899 (1931); *Jones v. Carpenter,* 90 Fla. 407, 106 So. 127 (1925). In 1993, the Florida Supreme Court again emphasized the rule that "where equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of Article X, Section 4." *Palm Beach Savings & Loan Ass'n, F.S.A. v. Fishbein,* 619 So.2d 267, 271 (Fla.1993). Finally, the Florida Supreme Court, in *Havoco of America, Ltd. v. Hill,* 790 So.2d 1018 (Fla. 2001), stated its continued approval of the rule that equitable liens may be used as a remedy for creditors in cases where a debtor converts non-exempt assets into a homestead with the specific intent to hinder, delay and defraud creditors.

■ The determination of a creditor's entitlement to an equitable lien on real property must be made in accordance with applicable state law. *Matter of Bob Cooper, Inc.* 65 B.R. 609, 611 (Bankr. M.D.Fla.1986). Under Florida law, the test for imposition of an equitable lien is a disjunctive two prong test. *In re Diamond,* 196 B.R. 635, 639 (Bankr.S.D.Fla. 1996). "[E]quitable liens may be founded upon two bases: (1) a written contract that indicates an intention to charge a particular property with a debt or obligation; or, (2) a declaration by a court out of general considerations of right or justice as applied to the particular circumstances of a case." *Williams v. Aloisi,* 271 B.R. 676, 683 (M.D.Fla.2002) (citations omitted).

■ "The basis of equitable liens may be estoppel or unjust enrichment." *Blumin v. Ellis,* 186 So.2d 286 (Fla. 2d DCA 1966). However in order to prevail on an estoppel theory, there must be evidence of fraud, misrepresentation, or other affirmative deception." *Plotch v. Gregory,* 463 So.2d 432, 436 n. 1 (Fla. 4th DCA 1985)(citing *Rinker Materials Corp. v. Palmer First Nat'l Bank & Trust Co. of Sarasota,* 361 So.2d 156 (Fla.1978); *Diversified Commercial Developers, Inc. v. Formrite, Inc.,* 450 So.2d 533 (Fla. 4th DCA 1984)).

In the instant case, the Court finds that based on the evidence presented, an equitable lien is appropriate. Here, the Debtor undertook a carefully planned series of actions to defraud her creditors. First, the Debtor strategically and intentionally

delayed the filing of the Petition based on her expectation that she would receive an award of damages in the Personal Injury Lawsuit that she filed. Once the Debtor received the Settlement Proceeds, she deliberately orchestrated a series of actions to completely avoid possession of the funds. She first directed that the Settlement Proceeds be deposited directly into the trust account of her personal injury attorney. Then, instead of depositing the Settlement Proceeds into her personal bank account, the Debtor had her personal injury attorney to remit the funds directly to Chase to pay down the Mortgage on her homestead. After the Settlement Proceeds were received by Chase and the Debtor was assured that they were safely out of the reach of creditors, she filed for bankruptcy and attempted to protect the funds through her homestead exemption. As a result, the estate was deprived the Settlement Proceeds.

Based on these actions, the Court finds that equity demands that an equitable lien be imposed on the Debtor's homestead. It is clear that the Settlement Proceeds that were transferred to Chase are directly traceable to the Debtor's homestead. The Court holds that the Debtor cannot profit from her strategic and intentional delay of her bankruptcy filing. Further, the Court holds that the Debtor cannot act to the detriment of her creditors and then use the homestead exemption to deprive the estate of funds that would have been available if not for her actions. As such, the imposition of an equitable lien in favor of the Trustee is necessary to prevent the Debtor from using the homestead exemption as an instrument of fraud and to prevent the Debtor from being unjustly enriched in this case. The Court finds that the amount of the lien shall be based upon the amount of the fraudulently transferred Settlement Proceeds used to pay down the Mortgage on the Debtor's homestead. The undisputed evidence reflects such amount to be $47,430.82. Therefore, the Court will impose an equitable lien in the amount of $47,430.82.

## CONCLUSION

For the reasons stated above, the Court finds that the Debtor is denied from receiving a discharge pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(2)(A). The Court also finds that the Debtor should not be denied from receiving a discharge pursuant to 11 U.S.C. §§ 727(a)(5) and 727(a)(4)(D). In addition, the Trustee is entitled to the imposition of an equitable lien on the Debtor's homestead property in the amount of $47,430.82.

## ORDER

The Court, having reviewed the pleadings, having heard the testimony of the witnesses, having reviewed the exhibits admitted into evidence, having heard the argument of counsel and being otherwise being fully advised in the premises, does hereby:

**ORDER AND ADJUDGE** that:

1. Judgment shall be entered in favor of the Plaintiff denying the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(2)(A).

2. Judgment shall be entered in favor of the Defendant pursuant to 11 U.S.C. §§ 727(a)(5) and 727(a)(4)(D).

3. The Plaintiff is entitled to the imposition of an equitable lien in the amount of Forty–Seven Thousand Four Hundred Thirty Dollars and Eight–Two Cents ($47,430.82) against the homestead property of the Defendant located at 7225 Coppitt Key Street, Lake Worth, Florida, 33467, which is legally described as:

Lot 87, of CHARLESTON SHORES, according to the Plat thereof, as recorded in Plat Book 72, Pages 122 through 128, inclusive of the Public Records of Palm Beach County, Florida.

4. The equitable lien imposed herein may be enforced by foreclosure. The Defendant's homestead exemption shall not be a defense to any action taken by the Plaintiff to enforce this equitable lien against the real property.

5. Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate Final Judgment will be entered in the above-referenced adversary proceeding contemporaneously herewith.